UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Jose Hernandez Corchado,
      Claimant

      v.                                    Case No. 12-cv-52-SM
                                            Opinion No. 2013 DNH 010
Michael J. Astrue, Commissioner,
Social Security Administration,
      Defendant


**O R D E R**

Pursuant to 42 U.S.C. § 1383(c)(3), Claimant, Jose Hernandez Corchado, moves to reverse the Commissioner's decision denying his application for Supplemental Security Income Benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 et seq. Document No. 10.  The Commissioner objects and moves for an order affirming his decision (doc. no. 11).


**Factual Background**

I.   Procedural History

On September 18, 2009, claimant filed an application for Supplemental Security Income benefits ("SSI benefits"), alleging that he had been unable to work since June 30, 2008.  He asserts eligibility for benefits based on disabilities due to status post-electrocution, with burns over 70 percent of the body and multiple skin grafts; non-healing wound behind the left knee and status post-flap insertion; right foot drop; post-traumatic

stress disorder; and depression.  His application for benefits was denied and he requested an administrative hearing before an Administrative Law Judge ("ALJ").

Claimant, who was represented by counsel, appeared and testified before an ALJ on October 3, 2011.  An impartial medical expert and an impartial vocational expert also testified at the hearing.  On October 28, 2011, the ALJ issued his written decision, concluding that claimant was not disabled within the meaning of the Act.  On January 20, 2012, the Appeals Council denied claimant's request for review.  Accordingly, the ALJ's decision became the final decision of the Commissioner, subject to judicial review.

Claimant then filed a timely action in this court, appealing the denial of SSI benefits.  Now pending are claimant's "Motion for Order Reversing Decision of the Commissioner" (doc. no. 10) and the Commissioner's "Motion for Order Affirming the Decision of the Commissioner" (doc. no. 11).

II.  Stipulated Facts

Pursuant to Local Rule 9.1(d), the parties submitted a Joint Statement of Material Facts which, because it is part of the court record (doc. no. 12), need not be recounted in this opinion.

**Standard of Review**

I.  <u>Properly Supported Findings by the ALJ are
    Entitled to Deference</u>.

Pursuant to 42 U.S.C. § 405(g), the court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." Factual findings of the Commissioner are conclusive if supported by substantial evidence.[1] See 42 U.S.C. § 405(g); <u>Irlanda Ortiz v. Secretary of Health & Human Services</u>, 955 F.2d 765, 769 (1st Cir. 1991). Moreover, provided the ALJ's findings are supported by substantial evidence, the court must sustain those findings even when there may also be substantial evidence supporting the contrary position. See <u>Tsarelka v. Secretary of Health & Human Services</u>, 842 F.2d 529, 535 (1st Cir. 1988) ("[W]e must uphold the [Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence."). See also <u>Rodriguez v. Secretary of Health & Human Services</u>, 647 F.2d 218, 222 (1st Cir. 1981) ("We must uphold the [Commissioner's] findings in this case if a reasonable mind, reviewing the

---

1   Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938). It is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. <u>Consolo v. Federal Maritime Comm'n.</u>, 383 U.S. 607, 620 (1966).

evidence in the record as a whole, could accept it as adequate to support his conclusion.").

In making factual findings, the Commissioner must weigh and resolve conflicts in the evidence. See <u>Burgos Lopez v. Secretary of Health & Human Services</u>, 747 F.2d 37, 40 (1st Cir. 1984) (citing <u>Sitar v. Schweiker</u>, 671 F.2d 19, 22 (1st Cir. 1982)). It is "the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence. Indeed, the resolution of conflicts in the evidence is for the [Commissioner], not the courts." <u>Irlanda Ortiz</u>, 955 F.2d at 769 (citation omitted). Accordingly, the court will give deference to the ALJ's credibility determinations, particularly when those determinations are supported by specific findings. See <u>Frustaglia v. Secretary of Health & Human Services</u>, 829 F.2d 192, 195 (1st Cir. 1987) (citing <u>Da Rosa v. Secretary of Health & Human Services</u>, 803 F.2d 24, 26 (1st Cir. 1986)).

II. <u>The Parties' Respective Burdens</u>

An individual seeking Social Security disability benefits is disabled under the Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.

4

§ 423(d)(1)(A). The Act places a heavy initial burden on claimant to establish the existence of a disabling impairment. See Bowen v. Yuckert, 482 U.S. 137, 146-47 (1987); Santiago v. Secretary of Health & Human Services, 944 F.2d 1, 5 (1st Cir. 1991). To satisfy that burden, claimant must prove that his impairment prevents him from performing his former type of work. See Gray v. Heckler, 760 F.2d 369, 371 (1st Cir. 1985) (citing Goodermote v. Secretary of Health & Human Services, 690 F.2d 5, 7 (1st Cir. 1982)). Nevertheless, claimant is not required to establish a doubt-free claim. The initial burden is satisfied by the usual civil standard: a "preponderance of the evidence." See Paone v. Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982).

If claimant demonstrates an inability to perform his previous work, the burden shifts to the Commissioner to show that there are other jobs in the national economy that he can perform. See Vazquez v. Secretary of Health & Human Services, 683 F.2d 1, 2 (1st Cir. 1982). See also 20 C.F.R. §§ 404.1512(g). If the Commissioner shows the existence of other jobs that claimant can perform, then the overall burden to demonstrate disability remains with claimant. See Hernandez v. Weinberger, 493 F.2d 1120, 1123 (1st Cir. 1974); Benko v. Schweiker, 551 F. Supp. 698, 701 (D.N.H. 1982).

In assessing a disability claim, the Commissioner considers both objective and subjective factors, including: (1) objective medical facts; (2) claimant's subjective claims of pain and disability, as supported by the testimony of claimant or other witnesses; and (3) claimant's educational background, age, and work experience.  See, e.g., Avery v. Secretary of Health & Human Services, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote, 690 F.2d at 6.  When determining whether a claimant is disabled, the ALJ is also required to make the following five inquiries:

>   (1)  whether claimant is engaged in substantial gainful activity;
>
>   (2)  whether claimant has a severe impairment;
>
>   (3)  whether the impairment meets or equals a listed impairment;
>
>   (4)  whether the impairment prevents claimant from performing past relevant work; and
>
>   (5)  whether the impairment prevents claimant from doing any other work.

20 C.F.R. § 404.1520.  Ultimately, a claimant is disabled only if his:

> physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

With those principles in mind, the court reviews claimant's motion to reverse and the Commissioner's motion to affirm his decision.

**Discussion**

I. <u>The ALJ's Findings</u>

In concluding that claimant was not disabled within the meaning of the Act, the ALJ properly employed the mandatory five-step sequential evaluation process described in 20 C.F.R. § 404.1520. He first determined that claimant had not been engaged in substantial gainful employment since his alleged onset of disability. Next, he concluded that claimant has the severe impairments of "status post electrocution with burns over 70 percent of the body and multiple skin grafts, non-healing wound of the left popliteal fossa of the left knee status post flap insertion, and right foot drop." Administrative Record ("Admin. Rec.") 13. The ALJ found, however, that claimant did not suffer the severe impairments of post-traumatic stress disorder or depression. He further determined that claimant "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." <u>Id</u>. at 15 (citing Part 404, Subpart P, Appendix 1).

Next, the ALJ found that claimant retained the residual functional capacity to perform medium work, "except that he may require a cane to ambulate and is minimally limited in his ability to push and pull." Id. The ALJ determined, therefore, that claimant "is capable of performing past relevant work in retail sales" and "other jobs that exist in significant numbers in the national economy." Id. at 20.

Consequently, the ALJ concluded that claimant was not "disabled," at any time relevant to his decision. Id. at 22.

On appeal, claimant argues that the ALJ erred in several respects. First, he says, the ALJ committed reversible error at step two by finding that claimant did not suffer from the severe impairments of post-traumatic stress disorder and depression. He argues next that the ALJ's step three determination that his soft tissue injuries do not meet or equal a listing was not sufficiently explained nor supported by substantial evidence. Finally, claimant argues that the ALJ committed several errors at the RFC stage.

## II. The ALJ's Step Two Error Was Harmless

The ALJ found that claimant has the "medically determinable mental impairments of posttraumatic stress disorder and major depressive disorder." Id. at 14. He concluded, however, that,

for claimant, these impairments are not "severe." Id. Specifically, he found that claimant's mental impairments "do not cause more than a minimal limitation in the claimant's ability to perform basic mental work activities." Id. Claimant challenges that finding.

"It is well established in this circuit 'that the Step 2 severity requirement is ... to be a de minimus policy, designed to do no more than screen out groundless claims.'" Mohammad v. Astrue, 2011 WL 1706116, at *7 (D.N.H. April 4, 2011) (quoting McDonald v. Secretary of Health & Human Services, 795 F.2d 1118, 1124 (1st Cir. 1986)). Accordingly, the Commissioner may summarily deny benefits at step two only "'to those applicants with impairments ... which could never prevent a person from working.'" McDonald, 795 F.2d at 1125 (quoting Baeder v. Heckler, 768 F.2d 547, 553 (3d Cir. 1985)).

Although the ALJ at step two discussed claimant's mental impairments in some detail, he erred in finding that claimant had not met the de minimus showing. The provider reports easily carry claimant's case past the low step two threshold.

The ALJ's step two error is not grounds for reversal, however, because he "continued through the remaining steps and considered all of the claimant's impairments." Syms v. Astrue,

9

2011 WL 4017870, at *1 (D.N.H. Sept. 8, 2011) (DiClerico, J). After finding at step two that claimant had other severe impairments, the ALJ proceeded through the remaining steps of the five-part sequential analysis. At step four, he considered the impact that claimant's mental limitations have on his functional capacity. See Admin. Rec. at 19. The ALJ's step two error was, therefore, harmless. See Syms, 2011 WL 4017870, at *1 citing Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007) ("The decision reflects that the ALJ considered any limitations posed by the bursitis at Step 4. As such, any error that the ALJ made in failing to include the bursitis at Step 2 was harmless.").

III. The ALJ's Step Three Error Requires Remand

At step three of his sequential analysis, the ALJ made the following determination as to whether claimant's soft tissue injuries met Listing 1.08:

> The undersigned considered listing 1.08. Listing 1.08 cannot be met, as the claimant was not [sic] underwent continuing surgical management directed toward the salvage or restoration of major function, and such major function was not restored or expected to be restored within 12 months of onset.[2]

Admin. Rec. at 15.

---

2   The ALJ also found that claimant's right foot drop did not meet any listing "as the claimant maintained the ability to ambulate throughout the majority of the period at issue." Admin. Rec. at 15.

10

Claimant says that the ALJ's failure to provide an explanation for his conclusory step three determination, and his finding that claimant did not meet Listing 1.08, constitute reversible error. Because the court finds that the ALJ's failure to provide an adequate explanation for his step three determination warrants remand, claimant's second argument is not addressed.

A.   Claimant's Soft Tissue Injuries and Treatment

In June of 2008, claimant was electrocuted when the metal pole he was holding came into contact with a high tension wire. He was in a coma for one month and remained hospitalized for nine months with second and third degree burns over 60% of his body. While in the hospital, he underwent seven skin graft surgeries.

Upon his release, claimant continued to suffer from an unhealed wound behind his left knee that remained open and third-degree in nature. Claimant used a cane to walk and a support boot due to right foot drop. He underwent many months of focused treatment of the open wound, which involved, among other things, resting, elevating his leg, and offloading pressure. Four months of wound treatment took place while claimant was incarcerated in the Hillsboro County Department of Corrections.[3] After

---

3    Claimant was incarcerated for four months on apparently groundless charges that were later dropped due to mistaken identity.  Admin. Rec. 52, 335.

11

claimant's release from jail, the wound remained unresponsive to additional months of conservative treatment.  Claimant underwent skin graft surgery to resolve the wound site in August of 2010.

### B.   Listing 1.08 Requirements

Listing 1.08 requires a claimant to demonstrate that he had a soft tissue injury, such as burns, "of an upper or lower extremity, trunk, or face and head" that was "under continuing surgical management . . . directed toward the salvage or restoration of major function, and such major function was not restored or expected to be restored within 12 months of onset." 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 1.08.  "[U]nder continuing surgical management" refers to surgical procedures and associated treatments.  20 C.F.R., Pt. 404, Subpt. P, App. 1, § 1.00M.

For purposes of Listing 1.08, loss of a major function includes the inability to ambulate effectively on a sustained basis or the inability to perform fine and gross movements.  20 C.F.R., Pt. 404, Subpt. P, App. 1, § 1.00(B)(2)(a).  The regulations define "inability to ambulate effectively" as "an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 1.00(B)(2)(b).

The regulation goes on to state that "ineffective ambulation is defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." Id. But the regulation also explains that "[t]o ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living." Id. "Therefore," it states, "examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail." Id. The regulation cautions that "[t]he ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation." Id. (emphasis added).

    C.    <u>ALJ's Duty to Explain His Step Three Determination</u>

There is no serious dispute here that claimant was under continuing surgical management for his extensive burns for over two years following his accident (far surpassing the listing's

12-month requirement). The parties disagree, however, as to whether claimant's post-hospitalization treatments and surgery were directed toward restoration of effective ambulation. In other words, the parties dispute whether claimant's ability to walk after release from the hospital was compromised so severely that he met the definition of "ineffective ambulation."

In concluding that claimant's injuries did not meet Listing 1.08, the ALJ did not explain why he thought claimant's ongoing treatment was not directed toward restoration of effective ambulation. In fact, he did not mention effective ambulation in making his Listing 1.08 determination. That was error.

The ALJ "'is generally required to . . . state reasons why Petitioner's claim did not meet or equal the contemplated listing.'" Stratton v. Astrue, 2012 WL 1852084, at *8 (D.N.H. May 11, 2012) (McCafferty, M.J.) (quoting Zahm v. Astrue, 2010 WL 3515912, at *9 (D. Idaho Aug. 31, 2010)). An explanation at step three is adequate where the ALJ "'discuss[es] in detail the requirements of [the] Listing and reference[s] specific evidence in the record to support his step three determination.'" Id. at *9 (quoting Davenport v. Astrue, 2011 WL 839280, at *4 (E.D. Wash. Mar. 7, 2011) (citations omitted)). In contrast, a "boilerplate finding" is inadequate. Id. (quotation and citation omitted).

In Stratton, the court found the ALJ's conclusory step three finding to be inadequate. Id. As in that case, the ALJ here employed boilerplate language and did not "adduce evidence from the record to support" his conclusion. Id. Accordingly, the court necessarily finds that the ALJ erred at step three of his analysis.

The Commissioner does offer a post hoc justification for the ALJ's step three finding in an effort to save the decision. He says that the treatment and surgery were not directed toward restoring claimant's ability to "ambulate effectively" because the regulation that defines "ineffective ambulation" requires that the claimant must have been using a two-handed assistive device. Since claimant used only a single cane, says the Commissioner, the ALJ's step three determination, even if deficient for lack of explanation, is nonetheless supported by substantial evidence in the record.

Claimant counters that the regulatory definition is much broader than the Commission posits, as it encompasses all situations where claimant is not "'capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living.'" Pl. Reply Br., doc. no. 14, at 3 (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 100(B)(2)(b).

15

Claimant's broad reading of the regulation is supported by decisions from the only two courts of appeal to have considered the question. The Ninth Circuit in Dobson v. Astrue, 2008 WL 467694, at * 2 (9th Cir. Feb. 20, 2008), and the Seventh Circuit in Moss v. Astrue, 555 F.3d 556, 563 (7th Cir. 2009), concluded "that the use of a two-handed assistive device is not necessary to establish ineffective ambulation under" § 1.00(B)(2)(b). Dobson, 2008 WL 467694, at * 2. Although the "use of a two-handed assistive device is independently sufficient to establish ineffective ambulation," Dobson, 2008 WL 467694 at * 2 (emphasis in original), the regulation provides a "nonexhaustive list of examples of ineffective ambulation" that do not involve the use of two-handed devices. Moss, 555 F.3d at 562.

As noted in Dobson, "the Commissioner's commentary on effective ambulation in the Federal Register" supports this broad reading of the regulation. See 2008 WL 467694, at *1 & n.4. The Commissioner's commentary reads, in relevant parts, as follows:

> [I]f someone who uses one cane or crutch is otherwise unable to effectively ambulate, the impairment(s) might still meet or equal a listing.
>
> . . .
>
> The criteria do not require an individual to use an assistive device of any kind . . . [T]he . . . explanation and examples should make it clear that this applies to anyone who cannot walk adequately.
>
> . . .

16

> [W]e recognize that individuals with extreme inability to ambulate do not necessarily use assistive devices.

"Revised Medical Criteria for Determination of Disability, Musculoskeletal System and Related Criteria," 66 Fed. Red. 58010, 58013 (Nov. 19, 2001).

Given the broad regulatory definition of "ineffective ambulation," the Commissioner's rationale for the ALJ's step three determination (i.e., that substantial evidence demonstrates that claimant did not use a two-handed assistive device), is inconsistent with the Commissioner's own interpretation of the regulation and cannot serve to mitigate the error.  Indeed, if the rationale offered by the Commissioner on appeal was, in fact, the ALJ's reason for finding that claimant's injuries did not meet Listing 1.08, that, too, would constitute reversible error. See Dobson, 2008 WL 467694, at *2 (remanding for further step three analysis where the ALJ did not address whether the claimant "could (with or without a cane) 'ambulate effectively'").

It is possible, of course, that the ALJ did consider whether claimant's ambulation was "ineffective," as defined in the regulation.  Whether the ALJ did so, however, is not discernible from his decision.  Meaningful judicial review is, therefore, precluded.  See Gabriel v. Astrue, 2009 WL 453372, at *7 (D.N.H. Feb. 24, 2009) (lack of step three explanation may preclude

meaningful review). See also Alban v. Astrue, 2012 WL 6728055, at *4 (D. Conn. Dec. 6, 2012) (in the absence of an adequate step three discussion by the ALJ, remand is warranted where the reviewing court is unable to "'fathom the ALJ's rationale'") (quoting Berry v. Schweiker, 675 F.2d 464, 469 (2d Cir. 1982)).

Claimant presented evidence that he could not effectively ambulate (and, therefore, that his surgery in 2010 was targeted toward restoring a major life function). The case is remanded for reconsideration and an adequate step three discussion explaining whatever decision the ALJ makes.[4] See Gabriel, 2009 WL 453372, at *8 (remanded for reconsideration of conflicting evidence where "the ALJ presented no findings or analysis to support his step three determination").

---

4   The ALJ's inadequate soft tissue listing determination is not saved by his separate finding that claimant's foot drop did not meet any listing because claimant had the "ability to ambulate." Admin. Rec. at 15. For one thing, the portions of the record the ALJ cites in support of his foot drop determination (i.e., physician findings that, during examination, claimant was "ambulatory"), do not shed light on whether, in reaching his separate Listing 1.08 determination, the ALJ thought that use of a two-handed device is required under the regulatory definition of "ineffective ambulation." Moreover, in neither listing determination did the ALJ explain why (and it is not apparent from the record) a doctor's observation that claimant was "ambulatory" in the examination room establishes that claimant had the capacity to "sustain [...] a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 100(B)(2)(b). See James v. Astrue, 2012 WL 920014, at *5 (N.D. Tex. March 19, 2012) ("Nor is effective ambulation conclusively established merely because plaintiff had a normal gait and exhibited '[t]oe, heel and tandem walking' within normal limits upon examination").

IV. <u>Claimant's Remaining Arguments</u>

Because this case is being remanded for a proper step three determination, it is unnecessary to address claimant's remaining arguments. <u>See</u> <u>id</u>. (citing <u>Audler v. Astrue</u>, 501 F.3d 446, 449 (5th Cir. 2007)).

## Conclusion

Claimant's motion to reverse the decision of the Commissioner (doc. no. 10) is granted. The Commissioner's motion to affirm his decision (doc. no. 11) is denied. This case is remanded for further proceedings. Because remand is pursuant to sentence four of 42 U.S.C. § 405(g), the Clerk of Court is instructed to enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

January 29, 2013

cc: Raymond J. Kelly, Esq.
    Robert J. Rabuck, AUSA